GAGE & CO. ET AL. V. PARRY, ASSIGNEE, ET AL.

1. **Assignment for Benefit of Creditors**: CHATTEL MORTGAGES AND PARTIAL ASSIGNMENT TO PREFERRED CREDITORS: DELIVERY: VALIDITY. M. and H., merchants, were insolvent, and were indebted, among other persons, to A., B. and C., and were under a contingent liability to D., who was a surety on a note given by them to a bank. On demand of A. and B., they made to each of them a chattel mortgage, and at the same time, at request of one J., who knew the condition of the firm, and who was a friend of C. and D., but who had no authority to act for them, M. and H. also executed a chattel mortgage to C. and made a written assignment of all their accounts to D. to indemnify him against liability on said note. The mortgages thus made covered the entire stock of goods. Those to A. and B. were at once delivered, and they at once took possession of the mortgaged property themselves; but the mortgage to C. and the assignment to D. were given to J., and were not delivered to C. and D. until later in the day. When the above named instruments were made, M. & H. had no intention of making a general assignment for the benefit of their creditors, but about an hour later, following advice which they had received in the meantime, they did make such an assignment to P. After this general assignment had been delivered, J. delivered to C. his chattel mortgage, and to D. his partial assignment. *Held*—

   (1) That, since M. & H. had no intention of making a general assignment when they made the mortgages and the partial assigment, but made those instruments in good faith for the purpose of securing the mortgagees and of indemnifying the partial assignee, those instruments did not, in legal effect, constitute any part of the general assignment for the benefit of creditors, and that they, as well as the subsequent general assignment, were valid under § 2115 of the Code. See opinion for authorities.

   (2) That, since J. had no authority to act for C. and D., the mortgage to C. and the partial assignment to D. did not become operative until delivered to them respectively; and, as such delivery was not made until after the delivery of the general assignment to P., they vested in C. and D. no rights which they could assert against P., the general assignee. *Day v. Griffith*, 15 Iowa, 104, followed in principle.

   *Appeal from Polk Circuit Court.*

   WEDNESDAY, OCTOBER 20.

THE defendants Mary M. Morris and Samuel L. Hum-

phreys were partners, doing business in the city of Des
Moines.    They were indebted to defendants M. N. Baker, L.
H. Jones and I. J. Harrod, and defendant R. M. Briscoe was
surety on a note given by them to a bank.    On the twenty-
seventh day of June, 1884, they executed to Baker, Jones
and Harrod chattel mortgages to secure the debts they were
owing them severally.    These mortgages covered their entire
stock of merchandise.    They also assigned to Briscoe all the
accounts growing out of their business.    This assignment
was made for the purpose of indemnifying him against lia-
bility on the note on which he was security.    On the same
day they also executed a deed of general assignment, by
which they conveyed all of their property to defendant R.
H. Parry for the benefit of all of their creditors.

The mortgages to Baker, Jones and Harrod, and the
assignment to Briscoe, were all executed at the same time,
and the deed of general assignment to Parry was executed
at a later hour.    Baker and Jones immediately took posses-
sion of the mortgaged property under their mortgages, but
subsequently surrendered it to Parry, who took possession
under the deed of general assignment.    The assignment of
the book-accounts was not delivered to Briscoe until after the
deed of general assignment was executed, but when he
received it he took possession of the books, and proceeded to
collect the accounts.    Plaintiffs are general creditors of
Morris & Humphreys, and they subsequently instituted suits
against them on their claims.    They also sued out writs
of attachment, in which they caused Parry, Baker and Bris-
coe to be garnished.    They then jointly brought this action
in equity for the purpose of setting aside the mortgages to
Baker, Jones and Harrod, and the assignment to Briscoe, and
the general assignment to Parry, and of subjecting the prop-
erty, and the money collected on the accounts by Briscoe,
to the satisfaction of their debts.    They allege that said
mortgages and assignments were, in effect, a general assign-
ment for the benefit of creditors, and were so intended by

Morris & Humphreys, and that such assignment is void, for the reason that it was not made for the benefit of all of the creditors in proportion to the amount of their respective claims. Each of the defendants answered, denying the averments of the petition.

Briscoe also alleges that the assignment of the book-accounts to him was made in pursuance of a parol contract entered into between him and Morris & Humphreys at the time he became surety on said note, by which they agreed to indemnify him against liability thereon. Baker, Jones and Harrod each filed a cross-petition against plaintiffs and their co-defendants, in which they pleaded their several chattel mortgages, and prayed for the foreclosure of the same, and for judgments against Morris & Humphreys for the amount of their respective debts. Parry also filed a cross-petition against Briscoe, in which he alleged that the book-accounts, and the moneys collected thereon by Briscoe, were assets of the estate, and that the assignment of the accounts was not delivered until after the execution and delivery of the deed of general assignment; and he prayed that Briscoe be required to account to him therefor; and, in answer to the cross-petition of defendant Harrod, he alleged that the chattel mortgage under which Harrod claimed was not delivered or accepted until after the execution of the deed of general assignment. The circuit court adjudged that the mortgages to Baker, Jones and Harrod, and the assignment of the accounts to Briscoe, constituted a general assignment for the benefit of creditors, and that such assignment was void because it was not made for the benefit of all of the creditors. It also adjudged that the deed of general assignment to Parry was valid, and entered judgment against Briscoe, on the cross-petition of the assignee, for the amount of money collected by him on the accounts. It also gave Baker, Jones and Harrod judgments against Morris & Humphreys for the amount of their respective debts. But plaintiffs were

denied relief.   Plaintiffs and defendants Baker, Jones and
Harrod appeal.

*Nourse, Kaufman & Guernsey, Cummins & Wright* and
*N. B. Raymond,* for plaintiffs.

*Mitchell   & Dudley,* for defendant Baker and the
assignee.

*Phillips & Day,* for defendant Briscoe.

*Seevers & Sampson,* for defendants Jones and Harrod.

REED, J.—The first question which we will consider is
whether the chattel mortgages to Baker, Jones and Harrod,
and the assignment of the accounts to Briscoe, amounted, in
effect, to an assignment for the benefit of creditors.   If they
did, the assignment is clearly invalid, for the reason that it
was not made for the benefit of all of the creditors in pro-
portion to the amount of their respective claims.   Code, §
2115.   As stated above, those instruments were all executed
at the same time.   They covered all the assets of the firm of
Morris & Humphreys, and that firm was insolvent when
the instruments were executed.   Baker was an employe of
the firm, and the indebtedness to him was for money loaned
to the firm, and for wages due him.   One member of the
firm contemplated selling his interest in the business and
property of the partnership.   Baker knew this, and he
demanded that the amount of his debt should be paid or
secured before any change should be made, and the mortgage
to him was given in obedience to this demand.   The indebt-
edness to Jones was also for borrowed money.   He was
informed that the firm was about to secure Baker, and he
insisted that his debt should also be secured, and the mem-
bers of the firm accordingly consented to give him a mort-
gage on the merchandise in the store.   Neither Harrod nor
Briscoe was present at the time of the transaction, nor did

they know that any of the creditors were demanding security for their debts. One Ed. Jones, a relative of Harrod, was present at the time, and knew that Baker and defendant Jones (who is his brother) were demanding security. He had been making an examination into the affairs of the firm, with the view of purchasing the interest of the partner who desired to retire, and he appears to have had a better understanding of the condition of the business of the firm than either of the partners had. He also knew of Briscoe's liability as surety on the note to the bank, and he insisted that Harrod's debt should be secured, and that Briscoe should be indemnified against his liability on said note; and the mortgage to Harrod, and the assignment of the accounts to Briscoe, were executed in obedience to this demand. He did not have authority from either Harrod or Briscoe to act for them in the matter, nor did he claim to have any such authority. He, however, took possession of the mortgage to Harrod after it was executed, and claims to have taken possession of the property under it.

In determining the legal effect of the instruments, it is important to ascertain the intention with which they were executed. The creditors of Morris & Humphreys had no interest in or lien upon the property of the firm. The *jus disponendi* was in the members of the partnership. They had the legal right to pay or secure any one or more of their creditors, and their right in this respect was not at all affected by the fact that they were insolvent. Nor does the fact that the whole of their assets was devoted to the payment or security of but a portion of the debts that they were owing afford any ground of complaint to those creditors whose debts were unsecured. If, then, they executed the instruments with the *bona fide* intention of securing the mortgagees, and of indemnifying Briscoe against his liability on the note to the bank, the law will not give to their act a different character from that intended. This has been the uniform holding of this court in similar cases. See *Fromme v. Jones*, 13 Iowa,

480; *Lampson v. Arnold*, 19 Id., 479; *Farwell v. Howard*, 26 Id., 381; *Kohn v. Clement*, 58 Id., 589; *Cadwell's Bank v. Crittenden*, 66 Id., 237. Without setting out the circumstances attending the execution of the instruments with more particularity than is done above, we deem it sufficient to say that the evidence satisfies us that the only purpose which Morris & Humphreys had in view when they executed the mortgages and assignment was the securing of the debts they were owing to Baker, Jones and Harrod, and the indemnifying of Briscoe against liability on said note. They executed the instruments in obedience to the demands made upon them for security and indemnity, and there is on reason for supposing that they intended any other result than the creation of such security and indemnity. We think, therefore, that the circuit court erred in holding that the instruments were in legal effect an assignment for the benefit of creditors.

II. The deed of general assignment to Parry was executed within one hour after the execution of the chattel mortgages and the assignment to Briscoe. Plaintiffs contend that the execution of all the instruments constituted but one transaction, and that the whole transaction amounted to an assignment for the benefit of creditors,—each of the instruments being part of the assignment,—and that such assignment is invalid, for the reason that a preference is given to the secured creditors. This claim, however, is not sustained by the proof. The undisputed evidence is that Morris & Humphreys did not contemplate making a general assignment when they executed the other instruments, but that they determined to make an assignment when advised, after the execution of the mortgages, that the recording of those instruments would probably have the effect to cause their unsecured creditors to institute attachment suits against them. In this respect the case is similar in its facts to *Perry v. Vezina*, 63 Iowa, 25; *Farwell v. Jones*, Id., 316.

III. Morris & Humphreys assured Briscoe, when he

became surety for them on the note to the bank, that they would protect him against the same. But there was no agreement that he was to be indemnified in any particular manner against the liability he incurred by signing it. When the assignment of the accounts was executed, it was taken possession of by Jones, the person at whose suggestion it was made. As stated above, Jones had no authority from Briscoe to act for him in the transaction. In doing what he did about the matter, he was performing a friendly act in Briscoe's behalf. But he was in no position to bind him by any thing he did in the transaction. After he secured the assignment he took possession of the books in which the accounts were kept, and delivered them, together with the assignment, to Briscoe. But before this delivery was made the deed of general assignment had been executed, and the assignee had qualified and taken possession of the merchandise in the store. We are of the opinion that Briscoe acquired no rights under the assignment of the accounts. Delivery of the instrument was essential to give it validity and effect. The delivery to Jones was not a delivery to Briscoe; for, as we have said, he had no authority to bind him by accepting it. Morris & Humphreys could not be divested of the property by the instrument until it was accepted by Briscoe. But, before such acceptance by him, they executed the deed of general assignment, and the effect of that instrument was to pass to the assignee, for the benefit of their creditors, all the property of which they were seized at the time it was executed. Code, § 2117. The case, in this respect, is governed by the rule laid down in *Day v. Griffith*, 15 Iowa, 104.

The facts with reference to the execution of the mortgage to defendant Harrod are the same as those with reference to the assignment to Briscoe. There was no delivery or acceptance of the mortgage until after the deed of general assignment was executed, and the assignee had qualified and taken pos-

session of the property. Harrod, therefore, acquired no right under it which can be asserted against the assignee.

On the appeals of plaintiffs and the defendants Briscoe and Harrod, the judgment will be affirmed. On the appeal of defendants Baker and Jones it will be reversed.