ED. HERSHISER V. W. E. HIGMAN & CO.

[FILED MARCH 10, 1891.]

Insolvency: PREFERENCE OF CREDITORS NOT AN ASSIGNMENT.
An insolvent debtor, being pressed by several of his creditors
for security, executed in good faith, to each of certain creditors,
a chattel mortgage on all his property, each to secure a *bona fide*
debt. The mortgages were in the usual form, and made to each
creditor direct. The preferred creditors were not to prorate,
but the mortgages were given priority in the order in which
they were drawn. The mortgagees took possession of the mort-
gaged goods, and subsequently the sheriff levied thereon several
writs of attachments sued out by unsecured creditors. The
property was then replevied from the officer by one of the mort-
gagees. *Held,* That the mortgages were not void on account of
preference, and that the transaction did not constitute an as-
signment for the benefit of creditors within the meaning of the
assignment laws of the state.

ERROR to the district court for Holt county. Tried be-
low before NORRIS, J.

*A. E. Rice,* and *H. M. Uttley,* for plaintiff in error,
cited: *Preston v. Spaulding,* 10 N. E. Rep., 903; *Winner
v. Hoyt,* 28 N. W. Rep., 380; *Prout v. Vaughn,* 52 Vt.,
457; *Miners' Bank App.,* 57 Pa. St., 199; *Richmond v.
Mills,* 11 S. W. Rep., 960; *Bonns v. Carter,* 22 Neb., 518;
*Kellogg v. Richardson,* 19 Fed. Rep., 70.

*M. F. Harrington, contra,* cited: *Grimes v. Farrington,*
19 Neb., 45; *Bonns v. Carter,* 20 Id., 575; *Davis v. Scott,*
22 Id., 157.

NORVAL, J.

The defendants in error brought an action in replevin
in the district court of Holt county against the plaintiff
in error to recover the possession of a stock of merchandise

which Hershiser, as sheriff, had levied upon, as the property of one L. H. Boylan, to satisfy five writs of attachment.

L. H. Boylan, on the 17th day of August, 1887, was engaged in the mercantile business at Stuart, Holt county, and being pressed by his creditors he secured twelve of them, the others he failed to secure. Notes were given by Boylan to the following creditors for the amounts named:

| | | |
|---|---|---|
| Kimberley & Wilson | $325 | 91 |
| George Bowring | 200 | 00 |
| C. Shankbey & Co | 200 | 00 |
| Tollerton & Stetson Co | 329 | 64 |
| J. Feldhenheimer | 200 | 00 |
| W. E. Hyman & Co | 500 | 00 |
| L. A. Shankland & Co | 329 | 00 |
| Peavey Bros. | 84 | 00 |
| H. B. Boylan | 400 | 00 |
| H. E. Stetson | 24 | 30 |
| Van Kirwin & Floyd | 100 | 00 |
| J. & E. B. Friend Importing Co | 92 | 89 |

Each of the above named creditors received a note for the full amount due him, except the defendants in error W. E. Higman & Co., whose note represented one-half of the indebtedness to that firm. Two chattel mortgages were made on the entire stock of goods, each securing six of the notes, and in which each creditor and the amount due him was named. On the same day the mortgages were filed for record, and the mortgagees took immediate possession of the property.

On August 18 these mortgages were released and withdrawn from the files and separate mortgages in the usual form were given upon the same goods to secure each note. The creditors were given priority in the order named above. The mortgagees retained possession of the property until the sheriff levied the writs of attachment at the suits of

some of the unsecured creditors.  The notes secured by the mortgages amounted to $2,785.74, and the entire stock of goods was worth from $3,300 to $4,000.

The testimony shows that Boylan was insolvent and that the mortgages covered all his property, including that which was exempt by law.

The cause was tried to a jury, which found a verdict for the plaintiffs for the possession of the property, and assessed their damages at one cent.  A motion for a new trial was overruled, and judgment rendered on the verdict.  The defendant brings the case here on error.

It fully appears that the mortgages were given to secure *bona fide* debts of the mortgagor, and without any fraudulent purpose.  This court in numerous cases has held that it is competent for a debtor to secure one or more creditors to the exclusion of others, where the transaction is not tainted with any fraudulent intent. (*Nelson v. Garey*, 15 Neb., 531 ; *Bierbower v. Polk*, 17 Id., 268 ; *Grimes v. Farrington*, 19 Id., 44 ; *Davis v. Scott*, 22 Id., 154 ; *Ward v. Parlin*, 30 Id., 376.)

The fact that Boylan was insolvent does not affect his right to secure a part of his creditors.  They were pressing him for security, and in obedience to their demands the mortgages were executed for the sole purpose of securing the debts he justly owed them.  Nor are the mortgages invalidated because they covered all the assets of the mortgagor.  True, the value of the property exceeded the amount of the debts secured, but we do not think, under the circumstances of the case, that the excess was so great as to make the mortgages fraudulent as to his unsecured creditors.  Considerable margin should be allowed for costs and expenses.  Besides, property like that in controversy seldom, if ever, brings at forced sale its full value.

Some of the provisions of our assignment law have a bearing upon the question involved herein.  Sections 42 and 43 of that law are as follows :

"Sec. 42. If a person, being insolvent or in contemplation of insolvency, within thirty days before the making of any assignment, makes a sale, assignment, transfer, or other conveyance of any description of any part of his · property to a person who then has reasonable cause to believe him to be insolvent or in contemplation of insolvency, and that such sale, assignment, transfer, or other conveyance is made with a view to prevent the property from coming to his assignee in insolvency, or to prevent the same from being distributed under the laws relating to insolvency, or to defeat the object of, or in any way to impair, hinder, impede, or delay the operation and effect of, or to evade any of said provisions, the sale, assignment, transfer, or conveyance shall be void, and the assignee may recover the property or the assets of the insolvent. And if such sale, assignment, transfer, or conveyance is not made in the usual and ordinary course of business of the debtor, that fact shall be *prima facie* evidence of such cause of belief.

"Sec. 43. If a person, being insolvent, or in contemplation of insolvency, within thirty days before the making of the assignment, with a view to give a preference to a creditor, or person who has a claim against him, procures any part of his property to be attached, sequestered, or seized on execution, or makes any payment, pledge, assignment, transfer, or conveyance of any part of his property, either directly or indirectly, absolutely or conditionally, the person receiving such payment, pledge, assignment, transfer, or conveyance, or to be benefited thereby, having reasonable cause to believe such person is insolvent, or in contemplation of insolvency, and that such payment, pledge, assignment, or conveyance is made in fraud of the laws relating to insolvency, the same shall be void, and the assignee may recover the property, or the value of it, from the person so receiving it or so to be benefited."

The above provisions do not in any manner affect mort-

gages given to preferred creditors more than thirty days before the making of an assignment, but such mortgages are valid unless followed by an assignment within thirty days after the same are given.    But the provisions of sections 42 and 43 must be construed in connection with those of section 44 of the same act, which provides that " Nothing in this act contained shall be construed so as to prevent any debtor from paying or securing to be paid any debt not exceeding the sum of one hundred dollars, for clerks' or servants' wages, or from paying or securing any debt which shall have been created within nine months prior to the date of such payment or securing, or to affect any mortgage or security made in good faith to secure any debt or liability created simultaneously with such mortgage or security, provided any such mortgage shall be filed for record in the proper office within thirty days from its date."

It will be observed that a chattel mortgage given to secure any debt mentioned in the last quoted section is not invalid, although the same was given less than thirty days prior to the making of an assignment, provided the mortgage is filed for record within thirty days from its date.

The three sections quoted are the only ones on the statute books which prohibit debtors from preferring creditors, excepting section 29 of the assignment law.   The first subdivision of this section provide that "Every such assignment shall be void against the creditors of the assignor if it gives a preference of one debt or class of debts over another, except a preference to any person of not more than $100 for labor or wages."

The purpose and object of the law-making body in enacting the assignment law was to secure an equitable distribution of the property of an insolvent debtor among all his creditors in case he makes an assignment.   For that purpose sec. 29 was passed, prohibiting an assignor from preferring his creditors.    We suppose where a debtor gives

a mortgage to secure any indebtedness referred to in section 44, at or about the time of his making an assignment and as a part of the same transaction, that the mortgage would be invalid.

It is claimed that the mortgages, being made at the same time, covering all of Boyland's property, make the transaction a voluntary assignment for the benefit of creditors, within the meaning of the assignment law, and void on account of preference. Did the giving of the chattel mortgages, under the circumstances already stated, constitute an assignment within the spirit of the assignment law? This question was answered in the negative in *Davis v. Scott*, 22 Neb., 154. In that case R. N. Townsend gave seven chattel mortgages on the same day to as many creditors to secure *bona fide* debts. They were filed for record, and on the next day the sheriff levied attachments upon the mortgaged goods as the property of Townsend & Co. The assignee of the mortgages soon thereafter brought replevin and obtained possession of the goods. The court in the syllabus says : "A debtor has the right to prefer his creditors and to pay or secure those preferred. The execution of chattel mortgages to preferred creditors, if made in good faith to secure *bona fide* debts, even if made to a considerable number of such creditors at or about the same time—no trust being created—will not constitute an assignment for the benefit of creditors, if not so intended."

The same case was again before the court and the mortgages were sustained (27 Neb., 642).

The mortgages in the case at bar were not intended as an assignment. Boylan transferred his property by mortgages to his creditors direct to secure *bona fide* debts. No trust was created and the creditors were not to prorate. The same firm of attorneys represented the preferred creditors in taking the mortgages, and the goods being delivered to the attorneys was in contemplation of law a delivery to the mortgagees.

In *Gage v. Parry,* 69 Ia., 605, an insolvent firm, with the *bona fide* intention of securing particular creditors, executed three several chattel mortgages to three creditors, respectively, upon their entire stock of merchandise. At the same time the firm assigned all their book accounts to a fourth creditor. Subsequently on the same day they concluded to and did make a general assignment. The mortgages covered all the property of the firm excepting the book accounts. It was held that the executing of the mortgages and the assigning of the accounts did not operate as an assignment for the benefit of creditors and that the mortgages were valid.

In *Menzesheimer v. Kennedy,* 75 Wis., 411, an insolvent debtor executed two chattel mortgages, one to each of two creditors, on substantially all his property, not exempt, to secure the amount of his indebtedness to them. Two days later the mortgagees took possession of the property and the same was subsequently seized by the sheriff by virtue of several writs of attachment issued in actions brought by other creditors. It was held that the mortgages did not constitute a voluntary assignment, and were valid.

To a similar effect are *Carter v. Rewey,* 62 Wis., 552; *Hoey v. Pierron,* 67 Id., 262; *Chicago Coffin Co. v. Maxwell,* 70 Id., 282; *Ingram v. Osborne,* Id., 195; *Fecheimer v. Robertson,* 13 S. W. Rep., 423; *Farwell v. Harvard,* 26 Ia., 381; *Kohn v. Clement,* 12 N. W. Rep. [Ia.], 550; *Cadwell's Bank v. Crittenden,* 23 Id. 646; *Waterman v. Silberberg,* 2 S. W. [Tex.], 578; *Tootle v. Coldwell,* 30 Kan., 125; *Doremus v. O'Harra,* 1 O. St., 45; *Atkinson v. Tomlinson,* Id., 241; and *Natl. Bank v. Sprague,* 20 N. J. Eq., 28.

The case of *Bonns v. Carter,* 20 Neb., 566, is cited by the plaintiff in error. The facts in the case at bar do not bring it within the principles of that decision. In that case the debtor executed a chattel mortgage on his stock of merchandise to Bonns as trustee for seven creditors of the

mortgagor. The mortgage authorized the trustee to take immediate possession of the goods, sell the property, and apply the proceeds to the payment of the preferred creditors *pro rata*. The mortgage was held to be an assignment for the benefit of creditors, and void on account of preference. The decision was placed upon the ground that a trust was created by the mortgage. That element is absent in this case.

Another case cited in brief of plaintiff in error is *Winner v. Hoyt*, 66 Wis., 227; 28 N. W. Rep., 380. There the debtors, as one transaction, transferred all their property not exempt, by means of six chattel mortgages and five assignments, to secure certain creditors. One of the mortgages and one of the assignments were made to one Frank M. Hoyt to secure an indebtedness of the mortgagors to the Wisconsin Marine & Fire Insurance Company Bank. The instruments were made with the understanding that Hoyt, for himself and as trustee for the other creditors, should take immediate posssession of the property, convert it into money, and divide the same *pro rata* among the preferred creditors. If there was anything left after paying the claims it was to go to the unsecured creditors. It was held that the instruments should be construed together, and when thus construed the transaction was in effect a voluntary assignment. In the present case the creditors were not to prorate, and a mortgage was made direct to each creditor. No trust was created. In these material respects this case differs from *Winner v. Hoyt*. That case has been distinguished by the supreme court of Wisconsin in the opinions rendered in some of the cases cited above.

In *Preston v. Spalding*, 10 N. E. Rep. [Ill.], 903, was one in which an insolvent firm, on the same day that it made an assignment for the benefit of its creditors, preferred certain of its creditors by giving judgment notes. The making and delivery of the notes and the preparing

of the assignment were carried on at the same time.    The
notes were delivered, judgments rendered, and executions
levied before the deed of assignment was filed for record.
It was held that the judgments were preferences, within
the meaning of the assignment law of Illinois, which de- '
clares that all preferences in any assignment shall be void.
We do not question the soundness of that decision.    Such
a transaction would be void under our statute.    In the pres-
ent case the facts differ so materially from those in *Preston
v. Spaulding* as to take it out of the rule therein an-
nounced.

In each of the cases of *Richmond v. Mississippi Mills,*
11 S. W. Rep., 960, and *Appeal of Miners' Natl. Bank,*
57 Pa. St., 193, the property was conveyed to a trustee to
sell and with the proceeds to pay certain preferred cred-
itors.    These cases are directly in line with the decision in
*Bonns v. Carter.*

In the present case the evidence conclusively shows that
the mortgages were made in good faith to secure actual
debts of the mortgagor.    No fact or circumstance is dis-
closed by the record which tends in the least degree to im-
peach the good faith of Boylan or the preferred creditors.
The mortgages were in the usual form.    No trust was cre-
ated.    We therefore conclude that the mortgages did not
constitute an assignment for the benefit of creditors.

The judgment of the district court is

AFFIRMED.

THE other judges concur.